IN THE UNITED STATES BANKRUPTCY COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 08-25324-BKC-PGH
Chapter 11

IN RE:

FLORIDA HOUSING CORPORATION

    Debtor.

_____/

## WACHOVIA BANK'S CORRECTED MOTION FOR ADEQUATE PROTECTION AND OBJECTION TO USE OF CASH COLLATERAL

Secured creditor Wachvia Bank, National Association ("Wachovia"), by and through undersigned counsel, and pursuant to 11 U.S.C.A. §363 and Federal Rule of Bankruptcy Procedure 6004, hereby objects to the continued use by the debtor in possession of the funds in the debtor's deposit account no. 2000034807701 (the "Account") and the proceeds therefrom, without provision for adequate protection for secured creditor Wachovia Bank, which holds a perfected security interest in the Account and the proceeds therefrom, and moves for Court for entry of an order granting it adequate protection.

    1.    On October 15, 2008, Debtor Florida Housing Corporation ("Debtor" or "FHC") filed its petition under Chapter 11.

    2.    FHC owes $230,956.92 under two promissory notes dated October 27, 2006, which Notes renewed two other notes dated September 27, 2004. See Affidavit of Edgar Bermudez, Assistant Vice President of Wachovia Bank, N.A, Exhibit 1 hereto.

    3.    In each Note, the Debtor granted Wachovia a security interest in all funds deposited with the Bank. In pertinent part, each Note provides as follows:

> **Borrower's Accounts.** Except as prohibited by law, Borrower
> grants Bank a security interest in all of Borrower's deposit

>       accounts and investment property with Bank and any of its
>       affiliates.

See Exhibits A and B to the Affidavit of Edgar Bermudez, Exhibit 1 hereto, at page 5.

4. Wachovia's interest in the Account is perfected by control as the Account is maintained at the Bank. See Florida Statutes §§679.3121(2)(a)(security interest in deposit account is perfected <u>only</u> by control under §679.3141); 679.3141(2)(security interest in deposit account is perfected by control as defined in §679.1041); 679.1041(1)(a)(secured party has control of a deposit account if the secured party is the bank at which the account is maintained).

5. As of October 15, 2008, there was $133,747.64 in the Account. Affidavit of Edgar Bermudez.

6. 11 U.S.C.A. § 363(e) provides in pertinent part:

> Notwithstanding any other provision of the section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to used, sold, or leased, by the trustee, **the court**, with or without a hearing, **shall prohibit or condition such use**, sale, or lease **as is necessary to provide adequate protection of such interest**.

11 U.S.C.A. § 363(e) (2005) (emphasis supplied).

7. On October 16, 2008, the Debtor filed an Emergency Motion to Approve Use of Cash Collateral (DE#5). Although the Motion notes that Archon Financial Group "may claim a secured lien interest by virtue of the filing of loan documents creating a security interest in, inter alia, the Debtor's cash account….", this contention is incorrect. Because a security interest in a deposit account can only be maintained by control under §679.1041, Archon Financial Group lacks any perfected security interest in the subject account. Wachovia was not served with a copy of the Emergency Motion to Approve Use of Cash Collateral.

8. On October 31, 2008, the Court entered an Agreed Interim Order Setting Final Hearing on the Emergency Motion to Approve Use of Cash Collateral (DE 27). The Order reflects that its was agreed to by the Debtor and LaSalle Bank, which apparently has some relationship to Archon Financial Group. Wachovia was not noticed on the Motion or the Order and has not agreed to the content of the Order. For the reasons set forth above, LaSalle Bank's interst in the Account, if any, is unperfected as Wachovia – not LaSalle or Archon - has control over the Account. Any interest of LaSalle Bank or Archon in the Account is unperfected. Fla. Stat. §679.1041.

9. The Court has scheduled a final hearing on the Emergency Motion to Approve Use of Cash Collateral for December 8, 2008 at 10:00am.

Wherefore, Wachovia Bank, National Association, respectfully requests the Court to prohibit the further unauthorized use of its cash collateral, or condition it as necessary to provide adequate protection to secured creditor Wachovia Bank, and for such other relief as the Court deems fit.

### CERTIFICATION

The undersigned counsel for Wachovia Bank, N.A certifies that I am admitted to the Bar of the United States District Court for the Southern District of Florida and are in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

Respectfully Submitted,

Carlton Fields, P.A.
Attorneys for Creditor Wachovia Bank, NA
100 S.E. Second Street, Suite 4000
Miami, Florida 33131-9101
Telephone:    (305) 530-0050
Facsimile:    (305) 530-0055
nmclachlan@carltonfields.com

By: s/Niall T. McLachlan
    Niall T. McLachlan
    Fla. Bar No. 059552

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on the 5th day of December 2008, a true and correct copy of the foregoing was served electronically with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following parties and counsel of record:

Julianne R. Frank    fwbbnk@bellsouth.net , mgarbnk@bellsouth.net
Attorneys for Debtor

Richard H Malchon Jr    richard.malchon@ruden.com
Attorney for Archon Financial Group and LaSalle Bank

Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov

     I HEREBY CERTIFY that on the 5th day of December 2008, a true and correct copy of the foregoing was served electronically with the Clerk of the Court by using the CM/ECF system and a true and correct copy of the foregoing was served via U.S. Mail on the following parties:

Florida Housing Corp.
534 Datura Street
West Palm Beach, Florida 33401

CapMark Finance, Inc.
Attn.: Thomas M. Wainscott, Vice President
700 No. Pearl Street
#2200
Dallas, Texas 75201

                                                      s/ Niall T. McLachlan
                                                      Niall T. Mclachlan

IN THE UNITED STATES BANKRUPTCY COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

WEST PALM BEACH DIVISION

CASE NO.: 08-25324-BKC-PGH
Chapter 11

IN RE:

FLORIDA HOUSING CORPORATION

    Debtor.
_____/

## AFFIDAVIT OF INDEBTEDNESS

STATE OF NORTH CAROLINA   )
                                        )   SS:
COUNTY OF MECKLENBURG   )

    BEFORE ME, the undersigned authority, personally appeared EDGAR BERMUDEZ, Assistant Vice President, WACHOVIA BANK, NATIONAL ASSOCIATION, who after being duly sworn states:

    1.    My name is EDGAR BERMUDEZ and I am over 21 years of age. I am an Assistant Vice President of Wachovia Bank, National Association ("Wachovia" or "Bank") and make this affidavit in that capacity.

    2.    The information contained herein is based on my own personal knowledge or from my review of the Bank's records. The Bank's records of the matters being recorded are made at or near the time, by, or from information transmitted by, a person with knowledge of the matters being recorded. Said records are made and kept in the course of the Bank's regularly conducted business activities, and it is the regular practice of the Bank's business activities to make such records.

    3.    On October 27, 2006, Florida Housing Corporation executed and delivered to Wachovia a two renewal promissory notes in the amounts of $147,275.11 ("Note 1") and $101,492.50 ("Note 2"), which Notes renewed two promissory notes dated September 27, 2004 in the amounts of $162,523.00 and $112,000.00, respectively. True and correct copies of Note 1 and Note 2 are attached hereto as Exhibits "A" and "B", respectively.

14274264.1

5. The Bank owns and holds Note 1 and Note 2. The Notes are in default due to the Florida Housing Corpoprahon's failure to make payments as agreed as well as the its filing of the petition for relief under Chapter 11 in this case on October 15, 2008,

6. As of December 5, 2008, the Debtor owes Wachovia the following amounts under Note 1 and Note 2:

|              | Note 1       | Note 2      | Totals       |
|--------------|--------------|-------------|--------------|
| Principal    | $134,468.62  | $92,607.90  | $227,076.52  |
| Interest     | 2,229.24     | 1,517.51    | 3,746.75     |
| Late Charges | 79.30        | 54.35       | 133.65       |
| Total        | $136,777.16  | $94,179.76  | $230,956.92  |

7. Interest continues to accrue at the rates of $32.309 and $21.994, respectively, under Note 1 and Note 2.

8. As of October 15, 2008, the balance in Florida Housing Corpoation's checking account no. 2000034807701 was $133,747.64.

FURTHER AFFIANT SAYETH NOT.

EDGAR BERMUDEZ
Assistant Vice President
Wachovia Bank, National Association

STATE OF NORTH CAROLINA    )
                           )    SS:
COUNTY OF MECKLENBURG      )

SWORN TO AND SUBSCRIBED on this day, before me, an officer duly authorized in the State and County aforesaid to administer oaths and take acknowledgements, by EDGAR BERMUDEZ, as Assistant Vice President of WACHOVIA BANK, NATIONAL ASSOCIATION.

WITNESS my hand and official seal in the County and State last aforesaid this 5th day of December, 2008.

NOTARY PUBLIC
STATE OF NORTH CAROLINA
Name: Faye M. Gordan

(✓) Personally known or ( ) Produced _____ as identification.

My Commission Expires: 7/6/2010

OFFICIAL SEAL
FAYE M. GORDON
NOTARY PUBLIC-NORTH CAROLINA
COUNTY OF MECKLENBURG
My Commission Expires July 6, 2010

14274264.1                                         2

EXHIBIT 1
TO AFFIDAVIT
OF EDGAR BERMUDEZ

# PROMISSORY NOTE

$147,275.41

October 27, 2006

Florida Housing Corporation
534 Datura Street
Suite #420
West Palm Beach, Florida 33401
(Hereinafter referred to as "Borrower")

Wachovia Bank, National Association
Jacksonville, Florida 32202
(Hereinafter referred to as "Bank")

Borrower promises to pay to the order of Bank, in lawful money of the United States of America, at its office indicated above or wherever else Bank may specify, the sum of One Hundred Forty-Seven Thousand, Two Hundred Seventy-Five and 41/100 Dollars ($147,275.41) or such sum as may be advanced and outstanding from time to time, with interest on the unpaid principal balance at the rate and on the terms provided in this Promissory Note (including all renewals, extensions or modifications hereof, this "Note").

**RENEWAL/MODIFICATION.** This Promissory Note renews, extends and/or modifies that certain term Promissory Note dated September 27, 2004 (the "Original Promissory Note"), evidencing an original principal amount of $162,523.00 of which $147,275.41 is currently outstanding. This Promissory Note is not a novation.

**USE OF PROCEEDS.** Borrower shall use the proceeds of the loan(s) evidenced by this Note for the commercial purposes of Borrower, as follows: consolidate debt.

**SECURITY.** Borrower has granted Bank a security interest in the collateral described in the Loan Documents, including, but not limited to, real and personal property collateral described in that certain security instrument dated September 27, 2004.

**INTEREST RATE.** Interest shall accrue on the unpaid principal balance of this Note from the date hereof at the rate of 8.65% ("Interest Rate").

**DEFAULT RATE.** In addition to all other rights contained in this Note, if a Default (as defined herein) occurs and as long as a Default continues, all outstanding Obligations, other than Obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank or its affiliates, shall bear interest at the Interest Rate plus 3% ("Default Rate"). The Default Rate shall also apply from demand until the Obligations or any judgment thereon is paid in full.

**INTEREST AND FEES(S) COMPUTATION (ACTUAL/360).** Interest and fees, if any, shall be computed on the basis of a 360-day year for the actual number of days in the applicable period ("Actual/360 Computation"). The Actual/360 Computation determines the annual effective yield by taking the stated (nominal) rate for a year's period and then dividing said rate by 360 to determine the daily periodic rate to be applied for each day in the applicable period. Application of the Actual/360 Computation produces an annualized effective rate exceeding the nominal rate.

535080 (Rev 24 0)
CNOTE
PSI1317610890001       CFCNOTEXXX       Note doc

**PREPAYMENT COMPENSATION.** Principal may be prepaid in whole or in part at any time; provided, however, if principal is paid before it is due under this Note, whether voluntary, mandatory, upon acceleration or otherwise, such prepayment shall include a fee equal to 1% of the amount prepaid.

Any prepayment in whole or in part shall include accrued interest and all other sums then due under any of the Loan Documents. No partial prepayment shall affect the obligation of Borrower to make any payment of principal or interest due under this Note on the due dates specified.

**REPAYMENT TERMS.** This Note shall be due and payable in consecutive monthly payments of principal and interest in the amount of $1,586.00 commencing on November 27, 2006, and continuing on the same day of each month thereafter until fully paid. In any event, all principal and accrued interest shall be due and payable on October 27, 2019.

**APPLICATION OF PAYMENTS.** Monies received by Bank from any source for application toward payment of the Obligations shall be applied to accrued interest and then to principal. If a Default occurs, monies may be applied to the Obligations in any manner or order deemed appropriate by Bank.

If any payment received by Bank under this Note or other Loan Documents is rescinded, avoided or for any reason returned by Bank because of any adverse claim or threatened action, the returned payment shall remain payable as an obligation of all persons liable under this Note or other Loan Documents as though such payment had not been made.

**DEFINITIONS. Loan Documents.** The term "Loan Documents", as used in this Note and the other Loan Documents, refers to all documents executed in connection with or related to the loan evidenced by this Note and any prior notes which evidence all or any portion of the loan evidenced by this Note, and any letters of credit issued pursuant to any loan agreement to which this Note is subject, any applications for such letters of credit and any other documents executed in connection therewith or related thereto, and may include, without limitation, a commitment letter that survives closing, a loan agreement, this Note, guaranty agreements, security agreements, security instruments, financing statements, mortgage instruments, any renewals or modifications, whenever any of the foregoing are executed, but does not include swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time). **Obligations.** The term "Obligations", as used in this Note and the other Loan Documents, refers to any and all indebtedness and other obligations under this Note, all other obligations under any other Loan Document(s), and all obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank, or its affiliates, whenever executed. **Certain Other Terms.** All terms that are used but not otherwise defined in any of the Loan Documents shall have the definitions provided in the Uniform Commercial Code.

**LATE CHARGE.** If any payments are not timely made, Borrower shall also pay to Bank a late charge equal to 5% of each payment past due for 10 or more days. This late charge shall not apply to payments due at maturity or by acceleration hereof, unless such late payment is in an amount not greater than the highest periodic payment due hereunder.

Acceptance by Bank of any late payment without an accompanying late charge shall not be deemed a waiver of Bank's right to collect such late charge or to collect a late charge for any subsequent late payment received.

If this Note is secured by owner-occupied residential real property located outside the state in which the office of Bank first shown above is located, the late charge laws of the state where the real property is located shall apply to this Note and the late charge shall be the highest amount allowable under such laws. If no amount is stated thereunder, the late charge shall be 5% of each payment past due for 10 or more days.

**ATTORNEYS' FEES AND OTHER COLLECTION COSTS.** Borrower shall pay all of Bank's reasonable expenses actually incurred to enforce or collect any of the Obligations including, without limitation,

reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

**USURY.** If at any time the effective interest rate under this Note would, but for this paragraph, exceed the maximum lawful rate, the effective interest rate under this Note shall be the maximum lawful rate, and any amount received by Bank in excess of such rate shall be applied to principal and then to fees and expenses, or, if no such amounts are owing, returned to Borrower.

**DEFAULT.** If any of the following occurs, a default ("Default") under this Note shall exist: **Nonpayment; Nonperformance.** The failure of timely payment or performance of the Obligations or Default under this Note or any other Loan Documents. **False Warranty.** A warranty or representation made or deemed made in the Loan Documents or furnished Bank in connection with the loan evidenced by this Note proves materially false, or if of a continuing nature, becomes materially false. **Cross Default.** At Bank's option, any default in payment or performance of any obligation under any other loans, contracts or agreements of Borrower, any Subsidiary or Affiliate of Borrower, any general partner of or the holder(s) of the majority ownership interests of Borrower with Bank or its affiliates ("Affiliate" shall have the meaning as defined in 11 U.S.C. § 101, as in effect from time to time, except that the term "Borrower" shall be substituted for the term "Debtor" therein; "Subsidiary" shall mean any business in which Borrower holds, directly or indirectly, a controlling interest). **Cessation; Bankruptcy.** The death of, appointment of a guardian for, dissolution of, termination of existence of, loss of good standing status by, appointment of a receiver for, assignment for the benefit of creditors of, or commencement of any bankruptcy or insolvency proceeding by or against Borrower, its Subsidiaries or Affiliates, if any, or any general partner of or the holder(s) of the majority ownership interests of Borrower, or any party to the Loan Documents. **Material Capital Structure or Business Alteration.** Without prior written consent of Bank, (i) a material alteration in the kind or type of Borrower's business or that of Borrower's Subsidiaries or Affiliates, if any; (ii) the sale of substantially all of the business or assets of Borrower, any of Borrower's Subsidiaries or Affiliates or any guarantor, or a material portion (10% or more) of such business or assets if such a sale is outside the ordinary course of business of Borrower, or any of Borrower's Subsidiaries or Affiliates or any guarantor, or more than 50% of the outstanding stock or voting power of or in any such entity in a single transaction or a series of transactions; (iii) the acquisition of substantially all of the business or assets or more than 50% of the outstanding stock or voting power of any other entity; or (iv) should any Borrower or any of Borrower's Subsidiaries or Affiliates or any guarantor enter into any merger or consolidation. **Material Adverse Change.** Bank determines in good faith, in its sole discretion, that the prospects for payment or performance of the Obligations are impaired or there has occurred a material adverse change in the business or prospects of Borrower, financial or otherwise.

**REMEDIES UPON DEFAULT.** If a Default occurs under this Note or any Loan Documents, Bank may at any time thereafter, take the following actions: **Bank Lien.** Foreclose its security interest or lien against Borrower's deposit accounts and investment property without notice. **Acceleration Upon Default.** Accelerate the maturity of this Note and, at Bank's option, any or all other Obligations, other than Obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank, or its affiliates, which shall be due in accordance with and governed by the provisions of said swap agreements; whereupon this Note and the accelerated Obligations shall be immediately due and payable; provided, however, if the Default is based upon a bankruptcy or insolvency proceeding commenced by or against Borrower or any guarantor or endorser of this Note, all Obligations (other than Obligations under any swap agreement as referenced above) shall automatically and immediately be due and payable. **Cumulative.** Exercise any rights and remedies as provided under the Note and other Loan Documents, or as provided by law or equity.

**FINANCIAL AND OTHER INFORMATION.** Borrower shall deliver to Bank such information as Bank may reasonably request from time to time, including without limitation, financial statements and information pertaining to Borrower's financial condition. Such information shall be true, complete, and accurate.

**WAIVERS AND AMENDMENTS.** No waivers, amendments or modifications of this Note and other Loan Documents shall be valid unless in writing and signed by an officer of Bank. No waiver by Bank of any

Default shall operate as a waiver of any other Default or the same Default on a future occasion. Neither the failure nor any delay on the part of Bank in exercising any right, power, or remedy under this Note and other Loan Documents shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

Except to the extent otherwise provided by the Loan Documents or prohibited by law, each Borrower and each other person liable under this Note waives presentment, protest, notice of dishonor, demand for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, notice of sale and all other notices of any kind. Further, each agrees that Bank may (i) extend, modify or renew this Note or make a novation of the loan evidenced by this Note, and/or (ii) grant releases, compromises or indulgences with respect to any collateral securing this Note, or with respect to any Borrower or other person liable under this Note or any other Loan Documents, all without notice to or consent of each Borrower and other such person, and without affecting the liability of each Borrower and other such person; provided, Bank may not extend, modify or renew this Note or make a novation of the loan evidenced by this Note without the consent of the Borrower, or if there is more than one Borrower, without the consent of at least one Borrower; and further provided, if there is more than one Borrower, Bank may not enter into a modification of this Note which increases the burdens of a Borrower without the consent of that Borrower.

**MISCELLANEOUS PROVISIONS. Assignment.** This Note and the other Loan Documents shall inure to the benefit of and be binding upon the parties and their respective heirs, legal representatives, successors and assigns. Bank's interests in and rights under this Note and the other Loan Documents are freely assignable, in whole or in part, by Bank. In addition, nothing in this Note or any of the other Loan Documents shall prohibit Bank from pledging or assigning this Note or any of the other Loan Documents or any interest therein to any Federal Reserve Bank. Borrower shall not assign its rights and interest hereunder without the prior written consent of Bank, and any attempt by Borrower to assign without Bank's prior written consent is null and void. Any assignment shall not release Borrower from the Obligations. **Organization; Powers.** Borrower represents that Borrower (i) is (a) an adult individual and is sui juris, or (b) a corporation, general partnership, limited partnership, limited liability company or other legal entity, duly organized, validly existing and in good standing under the laws of its state of organization, and is authorized to do business in each other jurisdiction wherein its ownership of property or conduct of business legally requires such organization (ii) has the power and authority to own its properties and assets and to carry on its business as now being conducted and as now contemplated; and (iii) has the power and authority to execute, deliver and perform, and by all necessary action has authorized the execution, delivery and performance of, all of its obligations under this Note and any other Loan Document to which it is a party. **Compliance with Laws.** Borrower represents that Borrower and any subsidiary and affiliate of Borrower and any guarantor are in compliance in all respects with all federal, state and local laws, rules and regulations applicable to its properties, operations, business, and finances, including, without limitation, any federal or state laws relating to liquor (including 18 U.S.C. § 3617, et seq.) or narcotics (including 21 U.S.C. § 801, et seq.) and/or any commercial crimes; all applicable federal, state and local laws and regulations intended to protect the environment; and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), if applicable. None of Borrower, or any subsidiary or affiliate of Borrower or any guarantor is a Sanctioned Person or has any of its assets in a Sanctioned Country or does business in or with, or derives any of its operating income from investments in or transactions with, Sanctioned Persons or Sanctioned Countries in violation of economic sanctions administered by OFAC. The proceeds from the Loan will not be used to fund any operations in, finance any investments or activities in, or make any payments to, a Sanctioned Person or a Sanctioned Country. "OFAC" means the U.S. Department of the Treasury's Office of Foreign Assets Control. "Sanctioned Country" means a country subject to a sanctions program identified on the list maintained by OFAC and available at http://www.treas.gov/offices/enforcement/ofac/sanctions/, or as otherwise published from time to time. "Sanctioned Person" means (i) a person named on the list of Specially Designated Nationals or Blocked Persons maintained by OFAC available at http://www.treas.gov/offices/enforcement/ofac/sdn/, or as otherwise published from time to time, or (ii) (A) an agency of the government of a Sanctioned Country, (B) an organization controlled by a Sanctioned Country, or (C) a person resident in a Sanctioned Country, to the extent subject to a sanctions program administered by OFAC. **Applicable Law; Conflict Between Documents.** This Note and, unless

otherwise provided in any other Loan Document, the other Loan Documents shall be governed by and interpreted under the laws of the state named in Bank's address on the first page hereof without regard to that state's conflict of laws principles. If the terms of this Note should conflict with the terms of any loan agreement or any commitment letter that survives closing, the terms of this Note shall control. **Borrower's Accounts.** Except as prohibited by law, Borrower grants Bank a security interest in all of Borrower's deposit accounts and investment property with Bank and any of its affiliates. **Swap Agreements.** All swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time), if any, between Borrower and Bank or its affiliates are independent agreements governed by the written provisions of said swap agreements, which will remain in full force and effect, unaffected by any repayment, prepayment, acceleration, reduction, increase or change in the terms of this Note, except as otherwise expressly provided in said written swap agreements, and any payoff statement from Bank relating to this Note shall not apply to said swap agreements except as otherwise expressly provided in such payoff statement. **Jurisdiction.** Borrower irrevocably agrees to non-exclusive personal jurisdiction in the state identified as the Jurisdiction above. **Severability.** If any provision of this Note or of the other Loan Documents shall be prohibited or invalid under applicable law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note or other such document. **Notices.** Any notices to Borrower shall be sufficiently given, if in writing and mailed or delivered to the Borrower's address shown above or such other address as provided hereunder, and to Bank, if in writing and mailed or delivered to Wachovia Bank, National Association, Mail Code VA7628, P. O. Box 13327, Roanoke, VA 24040 or Wachovia Bank, National Association, Mail Code VA7628, 10 South Jefferson Street, Roanoke, VA 24011 or such other address as Bank may specify in writing from time to time. Notices to Bank must include the mail code. In the event that Borrower changes Borrower's address at any time prior to the date the Obligations are paid in full, Borrower agrees to promptly give written notice of said change of address by registered or certified mail, return receipt requested, all charges prepaid. **Plural; Captions.** All references in the Loan Documents to Borrower, guarantor, person, document or other nouns of reference mean both the singular and plural form, as the case may be, and the term "person" shall mean any individual, person or entity. The captions contained in the Loan Documents are inserted for convenience only and shall not affect the meaning or interpretation of the Loan Documents. **Advances.** Bank may, in its sole discretion, make other advances which shall be deemed to be advances under this Note, even though the stated principal amount of this Note may be exceeded as a result thereof. **Posting of Payments.** All payments received during normal banking hours after 2:00 p.m. local time at the office of Bank first shown above shall be deemed received at the opening of the next banking day. **Joint and Several Obligations.** If there is more than one Borrower, each is jointly and severally obligated together with all other parties obligated for the Obligations. **Fees and Taxes.** Borrower shall promptly pay all documentary, intangible recordation and/or similar taxes on this transaction whether assessed at closing or arising from time to time. **LIMITATION ON LIABILITY; WAIVER OF PUNITIVE DAMAGES.** EACH OF THE PARTIES HERETO, INCLUDING BANK BY ACCEPTANCE HEREOF, AGREES THAT IN ANY JUDICIAL, MEDIATION OR ARBITRATION PROCEEDING OR ANY CLAIM OR CONTROVERSY BETWEEN OR AMONG THEM THAT MAY ARISE OUT OF OR BE IN ANY WAY CONNECTED WITH THIS AGREEMENT, THE LOAN DOCUMENTS OR ANY OTHER AGREEMENT OR DOCUMENT BETWEEN OR AMONG THEM OR THE OBLIGATIONS EVIDENCED HEREBY OR RELATED HERETO, IN NO EVENT SHALL ANY PARTY HAVE A REMEDY OF, OR BE LIABLE TO THE OTHER FOR, (1) INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OR (2) PUNITIVE OR EXEMPLARY DAMAGES. EACH OF THE PARTIES HEREBY EXPRESSLY WAIVES ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES THEY MAY HAVE OR WHICH MAY ARISE IN THE FUTURE IN CONNECTION WITH ANY SUCH PROCEEDING, CLAIM OR CONTROVERSY, WHETHER THE SAME IS RESOLVED BY ARBITRATION, MEDIATION, JUDICIALLY OR OTHERWISE. **Patriot Act Notice.** To help fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. For purposes of this section, account shall be understood to include loan accounts. **Final Agreement.** This Note and the other Loan Documents represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**WAIVER OF JURY TRIAL.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH OF BORROWER BY EXECUTION HEREOF AND BANK BY ACCEPTANCE HEREOF, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT EACH MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE, THE LOAN DOCUMENTS OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS NOTE, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY WITH RESPECT HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT TO BANK TO ACCEPT THIS NOTE. EACH OF THE PARTIES AGREES THAT THE TERMS HEREOF SHALL SUPERSEDE AND REPLACE ANY PRIOR AGREEMENT RELATED TO ARBITRATION OF DISPUTES BETWEEN THE PARTIES CONTAINED IN ANY LOAN DOCUMENT OR ANY OTHER DOCUMENT OR AGREEMENT HERETOFORE EXECUTED IN CONNECTION WITH, RELATED TO OR BEING REPLACED, SUPPLEMENTED, EXTENDED OR MODIFIED BY, THIS NOTE.

**IN WITNESS WHEREOF,** Borrower, on the day and year first above written, has caused this Note to be duly executed under seal.

Florida Housing Corporation

By: _____ (SEAL)
Joseph S. Glucksman, President

CAT - Deal # 1317610688  Facility ID 1317610890

JASON O'BRIEN
NOTARY PUBLIC - STATE OF FLORIDA
COMMISSION # DD360743
EXPIRES 10/6/2008
BONDED THRU 1-888-NOTARY1

VERIFIED PLDL

EXHIBIT 2
TO AFFIDAVIT
OF EDGAR BERMUDEZ

# PROMISSORY NOTE

$101,492.50

DT# 161077

October 27, 2006

Florida Housing Corporation
534 Datura Street
Suite #420
West Palm Beach, Florida 33401
(Hereinafter referred to as "Borrower")

Wachovia Bank, National Association
Jacksonville, Florida 32202
(Hereinafter referred to as "Bank")

Borrower promises to pay to the order of Bank, in lawful money of the United States of America, at its office indicated above or wherever else Bank may specify, the sum of One Hundred One Thousand, Four Hundred Ninety-Two and 50/100 Dollars ($101,492.50) or such sum as may be advanced and outstanding from time to time, with interest on the unpaid principal balance at the rate and on the terms provided in this Promissory Note (including all renewals, extensions or modifications hereof, this "Note").

**RENEWAL/MODIFICATION.** This Promissory Note renews, extends and/or modifies that certain term Promissory Note dated September 27, 2004 (the "Original Promissory Note"), evidencing an original principal amount of $112,000.00 of which $101,492.50 is currently outstanding. This Promissory Note is not a novation.

**USE OF PROCEEDS.** Borrower shall use the proceeds of the loan(s) evidenced by this Note for the commercial purposes of Borrower, as follows: consolidate debt.

**SECURITY.** Borrower has granted Bank a security interest in the collateral described in the Loan Documents, including, but not limited to, real and personal property collateral described in that certain security instrument dated September 27, 2004.

**INTEREST RATE.** Interest shall accrue on the unpaid principal balance of this Note from the date hereof at the rate of 8.55% ("Interest Rate").

**DEFAULT RATE.** In addition to all other rights contained in this Note, if a Default (as defined herein) occurs and as long as a Default continues, all outstanding Obligations, other than Obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank or its affiliates, shall bear interest at the Interest Rate plus 3% ("Default Rate"). The Default Rate shall also apply from demand until the Obligations or any judgment thereon is paid in full.

**INTEREST AND FEES(S) COMPUTATION (ACTUAL/360).** Interest and fees, if any, shall be computed on the basis of a 360-day year for the actual number of days in the applicable period ("Actual/360 Computation"). The Actual/360 Computation determines the annual effective yield by taking the stated (nominal) rate for a year's period and then dividing said rate by 360 to determine the daily periodic rate to be applied for each day in the applicable period. Application of the Actual/360 Computation produces an annualized effective rate exceeding the nominal rate.

535080 (Rev 24 0)    PSI1317611570001    CFCNOTEXXX    Note doc
CNOTE

**PREPAYMENT COMPENSATION.** Principal may be prepaid in whole or in part at any time; provided, however, if principal is paid before it is due under this Note, whether voluntary, mandatory, upon acceleration or otherwise, such prepayment shall include a fee equal to 1% of the amount prepaid.

Any prepayment in whole or in part shall include accrued interest and all other sums then due under any of the Loan Documents. No partial prepayment shall affect the obligation of Borrower to make any payment of principal or interest due under this Note on the due dates specified.

**REPAYMENT TERMS.** This Note shall be due and payable in consecutive monthly payments of principal and interest in the amount of $1,087.10 commencing on November 27, 2006, and continuing on the same day of each month thereafter until fully paid. In any event, all principal and accrued interest shall be due and payable on October 27, 2019.

**APPLICATION OF PAYMENTS.** Monies received by Bank from any source for application toward payment of the Obligations shall be applied to accrued interest and then to principal. If a Default occurs, monies may be applied to the Obligations in any manner or order deemed appropriate by Bank.

If any payment received by Bank under this Note or other Loan Documents is rescinded, avoided or for any reason returned by Bank because of any adverse claim or threatened action, the returned payment shall remain payable as an obligation of all persons liable under this Note or other Loan Documents as though such payment had not been made.

**DEFINITIONS. Loan Documents.** The term "Loan Documents", as used in this Note and the other Loan Documents, refers to all documents executed in connection with or related to the loan evidenced by this Note and any prior notes which evidence all or any portion of the loan evidenced by this Note, and any letters of credit issued pursuant to any loan agreement to which this Note is subject, any applications for such letters of credit and any other documents executed in connection therewith or related thereto, and may include, without limitation, a commitment letter that survives closing, a loan agreement, this Note, guaranty agreements, security agreements, security instruments, financing statements, mortgage instruments, any renewals or modifications, whenever any of the foregoing are executed, but does not include swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time). **Obligations.** The term "Obligations", as used in this Note and the other Loan Documents, refers to any and all indebtedness and other obligations under this Note, all other obligations under any other Loan Document(s), and all obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank, or its affiliates, whenever executed. **Certain Other Terms.** All terms that are used but not otherwise defined in any of the Loan Documents shall have the definitions provided in the Uniform Commercial Code.

**LATE CHARGE.** If any payments are not timely made, Borrower shall also pay to Bank a late charge equal to 5% of each payment past due for 10 or more days. This late charge shall not apply to payments due at maturity or by acceleration hereof, unless such late payment is in an amount not greater than the highest periodic payment due hereunder.

Acceptance by Bank of any late payment without an accompanying late charge shall not be deemed a waiver of Bank's right to collect such late charge or to collect a late charge for any subsequent late payment received.

If this Note is secured by owner-occupied residential real property located outside the state in which the office of Bank first shown above is located, the late charge laws of the state where the real property is located shall apply to this Note and the late charge shall be the highest amount allowable under such laws. If no amount is stated thereunder, the late charge shall be 5% of each payment past due for 10 or more days.

**ATTORNEYS' FEES AND OTHER COLLECTION COSTS.** Borrower shall pay all of Bank's reasonable expenses actually incurred to enforce or collect any of the Obligations including, without limitation,

reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

**USURY.** If at any time the effective interest rate under this Note would, but for this paragraph, exceed the maximum lawful rate, the effective interest rate under this Note shall be the maximum lawful rate, and any amount received by Bank in excess of such rate shall be applied to principal and then to fees and expenses, or, if no such amounts are owing, returned to Borrower.

**DEFAULT.** If any of the following occurs, a default ("Default") under this Note shall exist: **Nonpayment; Nonperformance.** The failure of timely payment or performance of the Obligations or Default under this Note or any other Loan Documents. **False Warranty.** A warranty or representation made or deemed made in the Loan Documents or furnished Bank in connection with the loan evidenced by this Note proves materially false, or if of a continuing nature, becomes materially false. **Cross Default.** At Bank's option, any default in payment or performance of any obligation under any other loans, contracts or agreements of Borrower, any Subsidiary or Affiliate of Borrower, any general partner of or the holder(s) of the majority ownership interests of Borrower with Bank or its affiliates ("Affiliate" shall have the meaning as defined in 11 U.S.C. § 101, as in effect from time to time, except that the term "Borrower" shall be substituted for the term "Debtor" therein; "Subsidiary" shall mean any business in which Borrower holds, directly or indirectly, a controlling interest). **Cessation; Bankruptcy.** The death of, appointment of a guardian for, dissolution of, termination of existence of, loss of good standing status by, appointment of a receiver for, assignment for the benefit of creditors of, or commencement of any bankruptcy or insolvency proceeding by or against Borrower, its Subsidiaries or Affiliates, if any, or any general partner of or the holder(s) of the majority ownership interests of Borrower, or any party to the Loan Documents. **Material Capital Structure or Business Alteration.** Without prior written consent of Bank, (i) a material alteration in the kind or type of Borrower's business or that of Borrower's Subsidiaries or Affiliates, if any; (ii) the sale of substantially all of the business or assets of Borrower, any of Borrower's Subsidiaries or Affiliates or any guarantor, or a material portion (10% or more) of such business or assets if such a sale is outside the ordinary course of business of Borrower, or any of Borrower's Subsidiaries or Affiliates or any guarantor, or more than 50% of the outstanding stock or voting power of or in any such entity in a single transaction or a series of transactions; (iii) the acquisition of substantially all of the business or assets or more than 50% of the outstanding stock or voting power of any other entity; or (iv) should any Borrower or any of Borrower's Subsidiaries or Affiliates or any guarantor enter into any merger or consolidation. **Material Adverse Change.** Bank determines in good faith, in its sole discretion, that the prospects for payment or performance of the Obligations are impaired or there has occurred a material adverse change in the business or prospects of Borrower, financial or otherwise.

**REMEDIES UPON DEFAULT.** If a Default occurs under this Note or any Loan Documents, Bank may at any time thereafter, take the following actions: **Bank Lien.** Foreclose its security interest or lien against Borrower's deposit accounts and investment property without notice. **Acceleration Upon Default.** Accelerate the maturity of this Note and, at Bank's option, any or all other Obligations, other than Obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank, or its affiliates, which shall be due in accordance with and governed by the provisions of said swap agreements; whereupon this Note and the accelerated Obligations shall be immediately due and payable; provided, however, if the Default is based upon a bankruptcy or insolvency proceeding commenced by or against Borrower or any guarantor or endorser of this Note, all Obligations (other than Obligations under any swap agreement as referenced above) shall automatically and immediately be due and payable. **Cumulative.** Exercise any rights and remedies as provided under the Note and other Loan Documents, or as provided by law or equity.

**FINANCIAL AND OTHER INFORMATION.** Borrower shall deliver to Bank such information as Bank may reasonably request from time to time, including without limitation, financial statements and information pertaining to Borrower's financial condition. Such information shall be true, complete, and accurate.

**WAIVERS AND AMENDMENTS.** No waivers, amendments or modifications of this Note and other Loan Documents shall be valid unless in writing and signed by an officer of Bank. No waiver by Bank of any

Default shall operate as a waiver of any other Default or the same Default on a future occasion. Neither the failure nor any delay on the part of Bank in exercising any right, power, or remedy under this Note and other Loan Documents shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

Except to the extent otherwise provided by the Loan Documents or prohibited by law, each Borrower and each other person liable under this Note waives presentment, protest, notice of dishonor, demand for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, notice of sale and all other notices of any kind. Further, each agrees that Bank may (i) extend, modify or renew this Note or make a novation of the loan evidenced by this Note, and/or (ii) grant releases, compromises or indulgences with respect to any collateral securing this Note, or with respect to any Borrower or other person liable under this Note or any other Loan Documents, all without notice to or consent of each Borrower and other such person, and without affecting the liability of each Borrower and other such person; provided, Bank may not extend, modify or renew this Note or make a novation of the loan evidenced by this Note without the consent of the Borrower, or if there is more than one Borrower, without the consent of at least one Borrower; and further provided, if there is more than one Borrower, Bank may not enter into a modification of this Note which increases the burdens of a Borrower without the consent of that Borrower.

**MISCELLANEOUS PROVISIONS. Assignment.** This Note and the other Loan Documents shall inure to the benefit of and be binding upon the parties and their respective heirs, legal representatives, successors and assigns. Bank's interests in and rights under this Note and the other Loan Documents are freely assignable, in whole or in part, by Bank. In addition, nothing in this Note or any of the other Loan Documents shall prohibit Bank from pledging or assigning this Note or any of the other Loan Documents or any interest therein to any Federal Reserve Bank. Borrower shall not assign its rights and interest hereunder without the prior written consent of Bank, and any attempt by Borrower to assign without Bank's prior written consent is null and void. Any assignment shall not release Borrower from the Obligations. **Organization; Powers.** Borrower represents that Borrower (i) is (a) an adult individual and is sui juris, or (b) a corporation, general partnership, limited partnership, limited liability company or other legal entity, duly organized, validly existing and in good standing under the laws of its state of organization, and is authorized to do business in each other jurisdiction wherein its ownership of property or conduct of business legally requires such organization (ii) has the power and authority to own its properties and assets and to carry on its business as now being conducted and as now contemplated; and (iii) has the power and authority to execute, deliver and perform, and by all necessary action has authorized the execution, delivery and performance of, all of its obligations under this Note and any other Loan Document to which it is a party. **Compliance with Laws.** Borrower represents that Borrower and any subsidiary and affiliate of Borrower and any guarantor are in compliance in all respects with all federal, state and local laws, rules and regulations applicable to its properties, operations, business, and finances, including, without limitation, any federal or state laws relating to liquor (including 18 U.S.C. § 3617, et seq.) or narcotics (including 21 U.S.C. § 801, et seq.) and/or any commercial crimes; all applicable federal, state and local laws and regulations intended to protect the environment; and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), if applicable. None of Borrower, or any subsidiary or affiliate of Borrower or any guarantor is a Sanctioned Person or has any of its assets in a Sanctioned Country or does business in or with, or derives any of its operating income from investments in or transactions with, Sanctioned Persons or Sanctioned Countries in violation of economic sanctions administered by OFAC. The proceeds from the Loan will not be used to fund any operations in, finance any investments or activities in, or make any payments to, a Sanctioned Person or a Sanctioned Country. "OFAC" means the U.S. Department of the Treasury's Office of Foreign Assets Control. "Sanctioned Country" means a country subject to a sanctions program identified on the list maintained by OFAC and available at http://www.treas.gov/offices/enforcement/ofac/sanctions/, or as otherwise published from time to time. "Sanctioned Person" means (i) a person named on the list of Specially Designated Nationals or Blocked Persons maintained by OFAC available at http://www.treas.gov/offices/enforcement/ofac/sdn/, or as otherwise published from time to time, or (ii) (A) an agency of the government of a Sanctioned Country, (B) an organization controlled by a Sanctioned Country, or (C) a person resident in a Sanctioned Country, to the extent subject to a sanctions program administered by OFAC. **Applicable Law; Conflict Between Documents.** This Note and, unless

otherwise provided in any other Loan Document, the other Loan Documents shall be governed by and interpreted under the laws of the state named in Bank's address on the first page hereof without regard to that state's conflict of laws principles. If the terms of this Note should conflict with the terms of any loan agreement or any commitment letter that survives closing, the terms of this Note shall control. **Borrower's Accounts.** Except as prohibited by law, Borrower grants Bank a security interest in all of Borrower's deposit accounts and investment property with Bank and any of its affiliates. **Swap Agreements.** All swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time), if any, between Borrower and Bank or its affiliates are independent agreements governed by the written provisions of said swap agreements, which will remain in full force and effect, unaffected by any repayment, prepayment, acceleration, reduction, increase or change in the terms of this Note, except as otherwise expressly provided in said written swap agreements, and any payoff statement from Bank relating to this Note shall not apply to said swap agreements except as otherwise expressly provided in such payoff statement. **Jurisdiction.** Borrower irrevocably agrees to non-exclusive personal jurisdiction in the state identified as the Jurisdiction above. **Severability.** If any provision of this Note or of the other Loan Documents shall be prohibited or invalid under applicable law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note or other such document. **Notices.** Any notices to Borrower shall be sufficiently given, if in writing and mailed or delivered to the Borrower's address shown above or such other address as provided hereunder, and to Bank, if in writing and mailed or delivered to Wachovia Bank, National Association, Mail Code VA7628, P. O. Box 13327, Roanoke, VA 24040 or Wachovia Bank, National Association, Mail Code VA7628, 10 South Jefferson Street, Roanoke, VA 24011 or such other address as Bank may specify in writing from time to time. Notices to Bank must include the mail code. In the event that Borrower changes Borrower's address at any time prior to the date the Obligations are paid in full, Borrower agrees to promptly give written notice of said change of address by registered or certified mail, return receipt requested, all charges prepaid. **Plural; Captions.** All references in the Loan Documents to Borrower, guarantor, person, document or other nouns of reference mean both the singular and plural form, as the case may be, and the term "person" shall mean any individual, person or entity. The captions contained in the Loan Documents are inserted for convenience only and shall not affect the meaning or interpretation of the Loan Documents. **Advances.** Bank may, in its sole discretion, make other advances which shall be deemed to be advances under this Note, even though the stated principal amount of this Note may be exceeded as a result thereof. **Posting of Payments.** All payments received during normal banking hours after 2:00 p.m. local time at the office of Bank first shown above shall be deemed received at the opening of the next banking day. **Joint and Several Obligations.** If there is more than one Borrower, each is jointly and severally obligated together with all other parties obligated for the Obligations. **Fees and Taxes.** Borrower shall promptly pay all documentary, intangible recordation and/or similar taxes on this transaction whether assessed at closing or arising from time to time. **LIMITATION ON LIABILITY; WAIVER OF PUNITIVE DAMAGES.** EACH OF THE PARTIES HERETO, INCLUDING BANK BY ACCEPTANCE HEREOF, AGREES THAT IN ANY JUDICIAL, MEDIATION OR ARBITRATION PROCEEDING OR ANY CLAIM OR CONTROVERSY BETWEEN OR AMONG THEM THAT MAY ARISE OUT OF OR BE IN ANY WAY CONNECTED WITH THIS AGREEMENT, THE LOAN DOCUMENTS OR ANY OTHER AGREEMENT OR DOCUMENT BETWEEN OR AMONG THEM OR THE OBLIGATIONS EVIDENCED HEREBY OR RELATED HERETO, IN NO EVENT SHALL ANY PARTY HAVE A REMEDY OF, OR BE LIABLE TO THE OTHER FOR, (1) INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OR (2) PUNITIVE OR EXEMPLARY DAMAGES. EACH OF THE PARTIES HEREBY EXPRESSLY WAIVES ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES THEY MAY HAVE OR WHICH MAY ARISE IN THE FUTURE IN CONNECTION WITH ANY SUCH PROCEEDING, CLAIM OR CONTROVERSY, WHETHER THE SAME IS RESOLVED BY ARBITRATION, MEDIATION, JUDICIALLY OR OTHERWISE. **Patriot Act Notice.** To help fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. For purposes of this section, account shall be understood to include loan accounts. **Final Agreement.** This Note and the other Loan Documents represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**WAIVER OF JURY TRIAL.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH OF BORROWER BY EXECUTION HEREOF AND BANK BY ACCEPTANCE HEREOF, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT EACH MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE, THE LOAN DOCUMENTS OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS NOTE, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY WITH RESPECT HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT TO BANK TO ACCEPT THIS NOTE. EACH OF THE PARTIES AGREES THAT THE TERMS HEREOF SHALL SUPERSEDE AND REPLACE ANY PRIOR AGREEMENT RELATED TO ARBITRATION OF DISPUTES BETWEEN THE PARTIES CONTAINED IN ANY LOAN DOCUMENT OR ANY OTHER DOCUMENT OR AGREEMENT HERETOFORE EXECUTED IN CONNECTION WITH, RELATED TO OR BEING REPLACED, SUPPLEMENTED, EXTENDED OR MODIFIED BY, THIS NOTE.

**IN WITNESS WHEREOF**, Borrower, on the day and year first above written, has caused this Note to be duly executed under seal.

Florida Housing Corporation

By: _____ (SEAL)
Joseph S. Glucksman, President

CAT - Deal # 1317611288  Facility ID 1317611570

JASON O'BRIEN
NOTARY PUBLIC - STATE OF FLORIDA
COMMISSION # DD360743
EXPIRES 10/6/2008
BONDED THRU 1-888-NOTARY1

VERIFIED FL DL #