# IN THE UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF FLORIDA

In re:  
FLORIDA HOUSING CORPORATION,  
d/b/a PALM BEACH ASSISTED  
LIVING FACILITY  
EIN# 65-0764109,  
        Debtor.      /

Case No. 08-25324-BKC-PGH  
Chapter 11

# DEBTOR'S PLAN OF LIQUIDATION/REORGANIZATION

FRANK, WHITE-BOYD, P.A.  
Attorneys for Debtor  
By: Julianne R. Frank, Esq.  
11382 Prosperity Farms Rd., #230  
Palm Beach Gardens, FL 33410  
(561) 626-4700

# **TABLE OF CONTENTS**

|     |                                                                  | **Page** |
|-----|------------------------------------------------------------------|----------|
| (a) | Definitions - Article I                                          | 1        |
| (b) | Classification of Claims and Interests - Article II              | 2        |
| (c) | Treatment of Claims and Interest under the Plan - Article III    | 3        |
| (d) | Impairment - Article IV                                          | 6        |
| (e) | Means of Execution and Security for Payments - Article V         | 6        |
| (f) | Executory Contracts - Article VI                                 | 7        |
| (g) | Effect of Confirmation - Article VII                             | 7        |
| (h) | Cram Down - Article VIII                                         | 8        |
| (i) | Modification - Article IX                                        | 8        |
| (j) | Retention of Jurisdiction - Article X                            | 9        |
| (k) | Miscellaneous - Article XI                                       | 10       |

# DEBTOR'S
# PLAN OF LIQUIDATION/REORGANIZATION

## ARTICLE I
## Definitions

For the purposes of this Plan and to the extent not otherwise provided herein, the terms below shall have the respective meanings hereinafter set forth and, unless otherwise indicated, the singular shall include the plural and capitalized terms shall refer to the terms as defined in this Article and, any term used in the Plan which is not defined below, but which is used in the Bankruptcy Code, shall have the meaning assigned to it in the Bankruptcy Code.

For the purposes of this Plan and to the extent not otherwise provided herein, the terms below shall have the respective meanings:

1.1     "Consummation" shall mean distribution of the initial dividend to all creditors.

1.2     "Disbursing Agent" is the party responsible for making distributions under the Plan. The first and only distribution is to be made by Debtor's counsel.

1.3     "Disputed Claim" means any Claim designated as disputed, contingent or unliquidated in Debtor's Schedules filed in connection with its Bankruptcy case, or any claim against which an objection to the allowance thereof has been, or will be, interposed, and as to which no Final Order has been entered.

1.4     "Effective Date" means the tenth day following the Confirmation Order (in

1

the event that such date is not a business day, the next day thereafter).

1.5     "Plan" or "The Plan" means this Chapter 11 Plan and any subsequent amendments or modifications.

1.6     "Principals" means the Debtor's president, Joe Glucksman. As a not for profit organization there are no equity security holders.

## ARTICLE II
## Classification of Claims and Interests

2.1     An allowed Claim is part of a particular class only to the extent that the Allowed Claim qualifies within the definition of that Class and, is in a different Class to the extent that the remainder of the Claim qualifies within the description of a different Class.

2.2     All Allowed Claims and all Allowed Interests (excluding claims designated under Section 507(a)(1) or 507(a)(2) of the Bankruptcy Code) shall be divided into the following Classes, which Classes shall be mutually exclusive:

ADMINISTRATIVE CLAIMS: Administrative Claimants are the claims of Debtor's bankruptcy counsel, FRANK, WHITE-BOYD, P.A., Debtors Accountant, NARDA E. BUTNER, and Debtor's Special Counsel, employed to handle all asspects of health care regulation, JOHN GILROY III, P.A.

PRIORITY TAX CLAIMS: No Priority Tax Claims exist.

CLASS I: Class I consists of the secured claim of CapMark Finance, Inc. as special servicer for LaSalle National Bank as Trustee ("LaSalle"), Loan ending #5931.

CLASS II: Class II consists of all inferior mortgage holders including, Contact

Property Management ("Contact"), West Palm Beach Community Redevelopment Authority ("CRA"), Palm Beach County Commission on Affordable Housing, and two loans by Wachovia Bank

CLASS III: Class III consists of all general unsecured creditors and all allowed unsecured portions of secured claims in Class II above. The unsecured creditors will share proportionately in the sum of $191,239.41 representing the total value of the Debtor's assets after distribution to Administrative claims.

## ARTICLE III
## Treatment of Claims and Interests Under the Plan

3.1   General. All payments under this Plan shall commence thirty days following the Effective Date of this plan.

3.2   Administrative Claims. Administrative claims in the nature described in 11 U.S.C. Section 507(a)(1), to the extent such claims are timely filed and allowed by the Court, shall be paid in full on or before the effective date of the Plan from funds realized from the sale of all of the Debtor's assets. At the time of this filing, the only known administrative professional fees and the projected balance due at the time of confirmation is that of Debtor's Counsel, Frank, White-Boyd, P.A. At this time, it is anticipated that Counsel will have an administrative claim of approximately $65,000, against which the original retainer of $40,000.00 will be applied. The claim of Debtor's Accountant, Narda E. Butner. Narda E. Butner has filed a fee application indicating a balance due of $2,012.50. And the claim of John Gilroy III, P.A., special counsel to the debtor, hired to handle all issues regarding health care regulations. John Gilroy III, P.A. has yet to file a fee application, however it is anticipated that one will be filed and the approximate

3

fees due to John Gilroy III, P.A. will be $4,675.00.

3.3 All fees due under 1129(a)(12) shall be paid as required by Section 1930. Notwithstanding any other provisions of the Plan to the contrary, the Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. Section 1930(a)(6), within ten (10) days of the entry of the order confirming this Plan, for pre-confirmation periods and simultaneously provide to the United States Trustee an appropriate affidavit indicating the cash disbursements for the relevant period. The Debtor, as reorganized Debtor, shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(A)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. §1930(a)(6), based upon all post-confirmation disbursements made by the reorganized Debtor, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code, and the reorganized Debtor shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating all the cash disbursements for the relevant period.

3.4 Priority Tax Claims. **No Priority Tax Claims of the Debtor exist.**

3.5 Class I. Class I is the secured claim of LaSalle, Loan ending #5931 in the amount of $4,619,038.31. This loan was secured by the first mortgage on all of the Debtor's assets.

Pursuant to agreement and the Court Order approving the sale of the Debtor's assets, LaSalle has agreed to except $2,600,000.00 along with all adequate protection

payments through the date of the sale closing in full satisfaction of the Debtor's obligation.

A total amount of $2,642,599.80 was paid at closing to LaSalle. LaSalle will not be afforded any additional treatment.

3.6    Class II. Class II consists of all inferior mortgage holders including Contact Property Management, West Palm Beach Community Redevelopment Association, Palm Beach County Commission on Affordable Housing, and two loans by Wachovia Bank. Since not even enough money was realized with the sale of all of the Debtor's assets, all allowed claims in this class will receive treatment under Class III below.

3.7    Class III. Class III is the general unsecured class all allowed claims of Class II and all allowed general unsecured claims. The unsecured creditors will share proportionately in the remaining assets of the Debtor after the distribution to the Administrative claims. It is projected that this sum will be one hundred ninety-one thousand, two hundred thirty-nine dollars and forty-one cents ($191,239.41).

3.9    Class V. The insider claims of the Debtor consist of the three loans made by Joe Glucksman, the President of the Debtor and his wife to the Debtor. These claims will receive no treatment under the plan.

3.10 Disposition of Non-Claim Creditors. Many debts were scheduled by the Debtor as disputed without a proof of claim being filed. To see a complete list of such claims, see **Exhibit "G"** of the Debtor's Disclosure Statement. The Debtor has no further dividend or payment obligation to these creditors and as such they will not be afforded a vote.

3.11    Blank Ballots. Any Ballot not filed in accordance with the filing instructions

on the Ballot pertaining to this Plan shall not be counted for voting purposes.

## ARTICLE IV
### Impairment

4.1     All classes are impaired under this Plan. These classes, accordingly, must vote to accept the Plan in order for the Plan to be confirmed. A Claimant who fails to vote to either accept or reject the Plan will not be included in the calculation regarding acceptance or rejection of the Plan.

## ARTICLE V
### Means of Execution and Security for Payments

5.1     The distribution of cash required under the Plan, shall be made from available funds of the Debtor currently being held in Frank, White-Boyd, P.A.'s trust account.

5.2     The distribution of cash required under Article III of the Plan shall, as set forth in such Article, be made from the proceeds of the sale of the Debtor's assets.

5.3     Upon the entry of the Confirmation Order, the Reorganized Debtor shall be vested with all of its property free and clear of all claims and interest of creditors, except as otherwise provided for herein.

5.4     After the entry of an Order of Confirmation, the Reorganized Debtor shall no longer continue any business.

5.5     Julianne R. Frank, Esquire, Counsel for Debtor, is named as the individual responsible for making the distributions under the Plan. The payments shall be as provided in Article III.

5.6     Any checks mailed by the disbursing agent for the payment to a particular

creditor which remains not cleared forty-five (45) days after mailing, shall constitute "unclaimed funds" which shall become the property of the Debtor and will be divided on a pro-rata basis among all remaining Class III creditors.

## ARTICLE VI
## Executory Contracts and Unexpired Leases

6.1 Debtor was a party to several lease agreements and executory contracts. All such leases/executory contracts have either been transferred to Gold Standard of Care as contemplated in the Asset Purchase Agreement, have expired on their terms, or if any could not, or were not transferred for what ever reason, are now to be deemed rejected by the Debtor. The only exception to this is the lease of the 2006 Cadillac CTS set to expire in February 2010. Said lease has been assumed by Joe Glucksman.

## ARTICLE VII
## Effect of Confirmation

7.1 Discharge. Except as otherwise provided in this Plan, Confirmation of the Plan and full compliance and performance with the Plan, shall be deemed to have discharged the Debtor from any Claim that arose on or prior to the Confirmation Date, and any Claim of a kind specified in Section 502(g), (h) or (i) of the Bankruptcy Code, whether or not:

(a) a Proof of the Claim is filed or deemed to be filed under Sections 501 and 1111(a) of the Bankruptcy Code;

(b) such Claim is allowed under Section 502 of the Bankruptcy Code; or

(c) the holder of such Claim has accepted the Plan.

The payments to be made by Debtor pursuant to this Plan shall be in full settlement and satisfaction of all Claims against Debtor.

## ARTICLE VIII
### Cram Down

If all of the applicable provisions of 11 U.S.C. Section 1129(a) other than paragraph (8), are found to have been met with respect to the Plan, Debtor may seek confirmation pursuant to 11 U.S.C. Section 1129(b). For the purposes of seeking confirmation under the cram down provisions of the Code, should that alternative means of confirmation prove to be necessary, Debtor reserve the right to modify or vary the treatment of the claims of the rejecting Classes as to comply with Section 1129(b) of the Code, provided such modification complies with the requirement of 11 U.S.C. Section 1127.

## ARTICLE IX
### Modification

Debtor may propose amendments to or modifications of this Plan at any time prior to confirmation with the leave of Court upon notice to parties entitled to receive the same. After confirmation, Debtor may, with the approval of this Court after notice and hearing, and so long as it does not materially adversely affect the interests of creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan, or in the Order of Confirmation, in such a manner as is necessary to carry out the purposes and effect of this Plan.

## ARTICLE X
## Retention of Jurisdiction

10.1   From and after entry of the Confirmation Order, the Bankruptcy Court shall retain such jurisdiction as is legally permissible over the reorganization case for the following purposes:

(a)   to hear and determine any and all objections to the allowance of any Claim or any controversy as to the classification of Claims;

(b)   to hear and determine any and all applications for compensation and reimbursement of expenses to professionals as well as to hear and determine claims entitled to priority under Section 507(a)(1) of Title 11;

(c)   to enable the Debtor to prosecute any and all proceedings which may be brought to set aside liens or encumbrances and to recover any transfers, assets, properties or damages to which the Debtor may be entitled under applicable provision of the Bankruptcy Code or any other Federal, State or local laws; including causes of action, controversies, disputes, and conflicts between the Debtor and any other party, including but not limited to any causes of action for objections to claims, preferences or fraudulent transfers and obligations or equitable subordination; and to enter any Order assuring that good, sufficient and marketable legal title is conveyed to the purchaser of the Debtor's property.

(d)   to consider any necessary valuation issues under Section 506 of the Code, and any proceeding to determine the amount, validity and priority of liens, in connection with the Debtor's property.

(e)   to determine the rights of any party in respect of the assumption or rejection of any executory contracts or unexpired leases.

(f) to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or Order of Confirmation, as may be necessary to carry out the purposes and intent of this Plan.

(g) to modify this Plan after Confirmation, pursuant to the Code.

(h) to enforce and interpret the terms and conditions of this Plan.

(i) to enter Orders to enforce the title, rights and power of the Estate as the Court may deem necessary.

(j) to enter Orders concluding and closing this case.

## ARTICLE XI
## Miscellaneous

11.1 Headings. Headings are utilized in this Plan for the convenience of reference only, and shall not constitute a part of this Plan for any other purpose.

11.2 Defects, Omissions and Amendments. This Plan may be altered, amended or modified by Debtor before or after the Confirmation Date as provided in Section 1127 of the Bankruptcy Code.

11.3 Governing Law. Except to the extent that the Bankruptcy Code or Florida Corporate Law is applicable, all rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida.

11.4 Severability. Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of this Plan.

11.5 Regulatory Approval. No regulatory approval is necessary for the

confirmation of this Plan.

    11.6  <u>Inconsistency.</u>  To the extent of any inconsistency between the Plan of Reorganization and accompanying Disclosure Statement, the terms of the Disclosure Statement shall be deemed to supercede.

    11.7  The Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. Section 1930(a)(6) within ten (10) days of the entry of the Confirmation Order for pre-confirmation quarters, and simultaneously provide to the United States Trustee the appropriate sums, based on all disbursements, required pursuant to 28 U.S.C. §1930(a)(6), until the earlier of the closing of this case by the issuance of a Final Decree by the Court, or upon the entry of an Order by this Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code, and the responsible party shall timely provide to the United States Trustee an appropriate affidavit indicating all cash disbursements for each quarter.

DATED: 11/18/09

| FLORIDA HOUSING CORP. | FRANK, WHITE-BOYD, P.A. |
| --- | --- |
|  | Attorneys for Debtor |
| By: _____ | By: _____ |
| Joe Glucksman, President | Julianne R. Frank, Esq. |
|  | 11382 Prosperity Farms Rd., #230 |
|  | Palm Beach Gardens, FL 33410 |
|  | (561) 626-4700 |
|  | Florida Bar a Bar No. 315745 |

Y:\Client Matters\Florida Housing Corp\Pleadings\PLAN.wpd

11